## Snyder *et al. versus* City of Philadelphia.

1. A vessel laden was lying at a wharf in Philadelphia, within the port warden's line on the Delaware; it was attempted to move her by a line attached to another wharf, extending to the port warden's line; in doing so she grounded on a rock, part of the natural bed of the river, and went to pieces. *Held*, that under the Act of February 2d 1854, sect. 28, the city was not liable for the injury to the vessel by reason of not removing the rock.

2. Winpenny *v.* Philadelphia, 15 P. F. Smith 140, remarked on.

January 12th 1875. Before AGNEW, C. J., SHARSWOOD, WILLIAMS, MERCUR, GORDON, PAXSON and WOODWARD, JJ.

Error to the District Court of *Philadelphia:* No. 186, to January Term 1873.

This was an action on the case, brought July 30th 1870, by W. H. Snyder and others, owners of the schooner "Amanda Flanagan," against the city of Philadelphia.

The case of the plaintiffs was, that on the 5th of May 1870, the schooner was lying at Cramp's wharf, on the river Delaware, in Philadelphia; the vessel had her cargo aboard. Cramp's wharf was a short wharf not extending out to the port warden's line; immediately below it was the Kensington Waterworks wharf, belonging to the city; this wharf extended to the port warden's line, and was 99 feet further out than Cramp's wharf. About four o'clock P. M. it was attempted to haul the vessel into the stream; to accomplish this a line was run from her bow to the outer end of the long wharf, and another line from her stern to the end of the short wharf; she was then hauled safely until her bow was a few feet beyond the long wharf, where she went aground; after making efforts unsuccessfully to get her off, about two o'clock in the next morning it was discovered that she had "broken her back"—as was afterwards ascertained—from having grounded on a rock on which she rested "amidship," and as the tide fell she settled "fore and aft," and broke into two pieces.

The evidence on the trial was substantially as above stated. It also appeared by the plaintiffs' evidence, that the rock was a natural formation and part of the bed of the river; before the wharf was built it had been exposed, so that a person might stand on it at low water; the wharf had been partially built on it; since the building of the wharf, the tide does not fall sufficiently to expose it to view.

After hearing all the plaintiffs' evidence, the court ordered a judgment of nonsuit.

This was assigned for error, on the removal of the record to the Supreme Court by writ of error.

The Act of February 2d 1854 (Consolidation Act), sect. 28, Pamph. L. 37, enacts that "it shall be the duty of the councils of the city of Philadelphia, after the requisite surveys and soundings

[*Snyder v.* Philadelphia.]

shall have been made, to fix lines beyond which no wharf or pier shall be constructed, and to keep the navigable waters *within said city for ever open and free from obstruction.* The city councils shall authorize the construction of wharves upon a plan and scale to meet the demands of commerce, &c."

The Act of May 13th 1856, sect. 12, Pamph. L. 570, enacts "that it shall be lawful for the councils of said city (of Philadelphia) to provide by ordinance for the *cleaning* of the docks on the Delaware and Schuylkill front of said city, and to require the owners of wharves and piers which surround such docks to cleanse the same; and after thirty days' default from the service of notice on them to perform said duty, it shall be lawful for the city to do said work and to apportion the expenses thereof among the owners of wharves and piers adjoining, in proportion to the extent of their wharves, having the privilege or use of such docks, and to collect the same by filing liens therefor, and process thereupon, as in case of claims for paving: Provided, that no dock shall be cleansed to a greater depth than the natural bed of the river." By ordinance of the councils of Philadelphia, the port warden's line had been fixed at the line to which the Waterworks wharf had been extended.

*J. B. Roney* and *M. P. Henry*, for plaintiffs in error.—Every thoroughfare which the public has a right to use, must be kept in such order that it can be safely used; if any one is injured by its bad condition, those bound to repair must answer in damages: Erie *v.* Schwingle, 10 Harris 388; Pittsburg *v.* Steamer Mary Ann, Id. 54; Thompson *v.* N. E. Railway Co., 2 B. & S. 106; Pittsburg *v.* Grier, 10 Harris 54. Under the Act of 1854, injury from an obstruction in the river makes the city liable: Winpenny *v.* City of Philadelphia, 15 P. F. Smith 140.

*R. N. Willson* and *C. H. T. Collis* (City Solicitor), for defendant in error, cited Winpenny *v.* City, *supra.*

Judgment was entered in the Supreme Court, January 18th 1875,

PER CURIAM.—The rock upon which the schooner "Amanda Flanigan" rested at the ebb of tide, was a part of the natural bed of the river at the place where this vessel sunk. That it was uneven in surface is evident from the fact that as the tide ebbed and the schooner pressed her bottom upon it, she dipped her bow and stern, while the middle remained stationary, thus causing her to "break her back." Whether the rock was embedded in mud, which gave way under the bow and stern, or whether it rose in projection from the general surface of its adjacent parts, is not disclosed by the evidence. It would be dangerous to carry the defi-

[Snyder *v.* Philadelphia.]

nition of an obstruction, as the term is used in the Act of May 2d 1854, sect. 28, to a natural bottom of the river such as this. Without holding that no natural formation lying in the way of safe navigation is an obstacle, or that the city is not compellable to remove any obstacle to navigation of the most dangerous sort, we may safely say, that the alleged obstruction in this case is not shown to be within the act, especially where no notice has been given to the city authorities of its existence. The case of Winpenny *v.* Philadelphia, 15 P. F. Smith 140, decided that the navigable waters within the city were not confined to the waters within the port wardens' line, but did not hold the converse, that the waters within that line were not navigable waters within the meaning of the act. That question remains untouched.

We discover no error to be corrected, and the judgment is therefore affirmed.